BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
LAUREN E. BORDER (Cal. Bar No. 327770)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8231
    Facsimile: (213) 894-0141
    E-mail:    lauren.border@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>CYNTHIA RAYGOZA, *et al.*,<br><br>        Defendant. | No. 2:25-cr-00780-SVW-2<br><br>GOVERNMENT'S OPPOSITION TO APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S DETENTION ORDER OF ASHLEIGH BROWN<br><br>Hearing Date: November 10, 2025<br>Hearing Time: 11:00 AM<br>Location:    Courtroom of the<br>                 Hon. Stephen V.<br>                 Wilson |
|---|---|

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Lauren E. Border, hereby files its Opposition to Application for Review of Magistrate Judge's Detention Order of Ashleigh Brown (Dkt. 56).

    This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 5, 2025					Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


           /s/
LAUREN E. BORDER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On August 28, 2025, defendant Ashleigh Brown ("defendant") and her two co-conspirators followed an Immigration and Customs Enforcement ("ICE") agent in her car for 15 miles from his workplace at the federal building in downtown Los Angeles to his home in Baldwin Park.  While wearing masks, defendant and her co-conspirators screamed at and taunted the agent in front of his family and neighbors, and they live-streamed his address on social media.  For her actions, a grand jury indicted defendant for conspiracy to publicly disclose the personal information of a federal agent, in violation of 18 U.S.C. § 371, and publicly disclosing the personal information of a federal agent, in violation of 18 U.S.C. § 119(a).

What is more, defendant committed this conduct while on bond for another federal case filed less than a month prior in which she was alleged to have assaulted a federal agent.  The terms of her bond explicitly ordered her to stay away from the Roybal Federal Courthouse and federal agents like the one she followed home. Defendant has demonstrated she is unable to comply with pretrial supervision and she has demonstrated that she disregards even the most lenient of bond terms.  The Court should uphold the Honorable Magistrate Judge Sagar's order concurring with the recommendation of the U.S. Probation and Pretrial Services Office and detain defendant pending trial.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendant Is Charged with Assaulting a Federal Officer and Granted Bond

On August 4, 2025, defendant was charged via Complaint with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) ("the assault case"). (Case No. 2:25-cr-00701-FMO, dkt. 1.) Specifically, it was alleged that on August 2, 2025, defendant struck Federal Protective Service ("FPS") Inspector Z.C. during a protest outside the Roybal Federal Building while Z.C. was escorting a detained protestor. (See id.)

Defendant made her initial appearance in the assault case on August 5, 2025. (Case No. 2:25-cr-00701-FMO, dkt. 6.) Magistrate Judge Oliver ordered defendant released pending trial with a $5,000 bond, and defendant was also ordered to stay 100 feet away from both Roybal Federal Courthouse and federal law enforcement agents. (Id.; Case No. 2:25-cr-00701-FMO, dkt. 25.) This bond was revoked on October 6, 2025, when defendant admitted at the revocation hearing that a federal warrant for her arrest was issued in this case. (Case No. 2:25-cr-00701-FMO, dkt. 91.) On October 27, 2025, well after defendant's violation of the terms of her bond, the United States Attorney's Office moved to dismiss the assault. (Case No. 2:25-cr-00701-FMO, dkts. 86, 87.)

### B. Defendant Violates her Bond and Commits Another Federal Crime Against Federal Law Enforcement on August 28, 2025

Instead of staying away from federal law enforcement agents, less than one month after her release on bond, defendant and two of her friends decided to follow an ICE agent ("R.H.") from work to his private home to intimidate him. (Dkt. 1 (complaint); dkt. 22

2

(indictment).)  On August 28, 2025, defendant got into her car and followed R.H. from the federal building located at 300 N. Los Angeles St. to his home in Baldwin Park -- approximately 15 miles and more than a 20-minute drive.  (See id.)  In doing so, defendant violated the terms of her bond in the assault case both by coming near R.H. and by being near the federal building where R.H. worked.  When defendant and her co-conspirators reached R.H.'s residence, while wearing masks, they yelled at him in front of his wife and children and shouted to his neighbors that he was an ICE agent.  (See id.; see also **Gov't Ex. A** (USAO_024); **Gov't Ex. B** (USAO_005); **Gov't Ex. C** (USAO_023).)[1]  Defendant and her co-conspirators live-streamed the events on social media accounts, including their following R.H. to his home and confrontation with him.  (See id.)  After Baldwin Park Police arrived, defendant and her co-conspirators announced on their live-stream a street name, residence number, and city that identified R.H.'s block, and stated, "come on down."  (See id.)  Other individuals did indeed arrive outside R.H.'s house.

### C. Defendant Is Ordered Detained in this Case

As a result of defendant's actions, on September 23, 2025, a grand jury indicted defendant in this case with violating 18 U.S.C. § 371: Conspiracy to Publicly Disclose the Personal Information of a Federal Agent; and 18 U.S.C. § 119(a): Publicly Disclosing the Personal Information of a Federal Agent ("the doxxing case").  (Dkt.

---

[1] Government exhibits A-C will be manually lodged with the Court.  In Government Exhibit B, a woman believed to be Brown can be heard saying a street number in Baldwin Park (0:28), acknowledging that many people are watching her live stream, and then saying: "There's the ICE agent – this is where he lives apparently" (1:07).  In Government Exhibit C, a woman believed to be Brown says a street name and number in Baldwin Park, followed by "so come on down!"

3

22.)  Defendant made her initial appearance on September 10, 2025, and Magistrate Judge Sagar ordered defendant detained pending trial. (Dkt. 9.)  Specifically, Judge Sagar noted the short period of time between defendant's arrest for assault and the instant case, and defendant's history of non-compliance with the bond conditions set in defendant's assault case.

On September 11, 2025, defendant moved for reconsideration of the detention order, requesting a $65,000 appearance bond with 14 other conditions, including: home detention, staying 1,000 feet away from a federal building/federal law enforcement, and a prohibition of defendant's use and access to social media.  (Dkt. 15.)  Judge Sagar found this combination of conditions insufficient to reasonably assure the safety of any other person and the community, noting again defendant's history of non-compliance with even the most lenient of bond conditions.  Judge Sagar also noted discrepancies in the PSA report showing defendant had not been truthful,[2] and that the letters the defense had submitted in support of defendant's reconsideration application demonstrated the authors did not understand the nature of the allegations in this case.  The court further questioned defendant's claim that she was "unaware" she was following an ICE agent to his home rather than to an ICE enforcement action, given that defendant followed a single car with a single person in it to a residential neighborhood, and her co-conspirators then walked up and down the street yelling that an ICE agent lived there.

---

[2] The court noted, for example, discrepancies regarding whether defendant's children lived with her and where defendant resided, and that defendant failed to report her additional contact with law enforcement while on bond.

4

On October 30, 2025, the defense filed the instant Application for Review of Detention Order. (Dkts. 54, 56.) The defense requests the same conditions previously rejected by Judge Sagar: "$65,000 appearance bond secured by four affidavits of surety, home detention with location monitoring, special condition to stay away from federal officers and buildings, drug testing, travel restrictions, and any other conditions required by the Court." (Id.)

The government now files this brief in opposition to defendant's Application for Review and requests the Court detain defendant pending trial.

**III. ARGUMENT**

    **A.    Legal Standard**

This Court reviews the magistrate's detention order de novo. United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990). Pretrial detention of a defendant without bail is appropriate where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. 18 U.S.C. § 3142(e); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). Generally, "the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing Motamedi, 767 F.2d at 1406-07).

In making its detention determination, a court should consider "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the "history and characteristics of the person," including "whether, at the time of the current offense . . . the person was on . . . release pending trial," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

**B.   Defendant Poses a Serious Danger to the Community**

Defendant has demonstrated she poses a danger to federal law enforcement and should be detained pending trial.  While on bond for assaulting a federal officer,[3] defendant is alleged to have violated the federal anti-doxxing statute, which criminalizes making publicly available "restricted personal information" -- including the home address -- of federal officers "with the intent to threaten, intimidate, or incite the commission of a crime of violence against [the officer]."  <u>See</u> 18 U.S.C. § 119(a); 18 U.S.C. § 1114.  As outlined above, this is a serious offense that jeopardized the safety of a federal officer and his family.  Moreover, the weight of the evidence in this case is strong, as evidenced by the videos submitted to the Court.

Defendant's history and characteristics also demonstrate she is unable to comply with court orders and thus remains a danger to the community and should be detained.  The Pretrial Services Report ("Report") notes that defendant "has not been compliant since her

---

[3] Although the assault case was eventually dismissed, this does not change the fact that defendant violated the Court's bond conditions and thus demonstrates defendant's inability to comply with court orders.

6

commencement of supervision" and "was not forthcoming" with Pretrial. (Report at 4.) The Report contains several discrepancies regarding, for example, (1) whether defendant's minor children live with defendant or her partner in Colorado; (2) the status of defendant's employment; and (3) defendant's financial responsibilities. (Report at 19-20.) Defendant also failed to report to Pretrial that she had local police contact (Report at 10), again demonstrating her lack of amenability to pretrial supervision. At bottom, defendant's concerning pattern of escalating behavior towards federal law enforcement and history of noncompliance with supervision show defendant remains a danger to the community.

**C.    Defendant Presents a Substantial Risk of Nonappearance**

Defendant is also a flight risk. Violation of 18 U.S.C. §§ 371, 119 carries a maximum sentence of five years, and the government estimates defendant's guidelines range to be over one year.[4] This penalty provides ample incentive to flee. See United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) (explaining that the "penalties possible under the present indictment" provided an "incentive [for the defendant] to consider flight"). Home detention and the unsecured $65,000 proposed bond signed by others is insufficient to ensure defendant will appear as instructed, as it is coupled with a powerful incentive to flee, defendant's history of violating supervision and changing her phone number, defendant's drug

---

[4] Specifically, the base offense level is 9 (U.S.S.G. § 2H3.1(a)(1)), and a +10 enhancement applies because the offense involved an interactive computer system. (See U.S.S.G. § 2H3.1(b)(2)(B).) Even with -3 for acceptance of responsibility and -2 for being a zero-point offender, defendant's guidelines range would be 15-21 months.

7

use, mental health concerns, unemployment, unstable housing, and minimal ties to this district. (Report at 10-11.)

Given the serious charges facing defendant and her history of disobeying court orders, the release conditions defendant proposes cannot reasonably assure defendant will appear at trial.

**IV. CONCLUSION**

Defendant's release would pose a threat to the community, and she is also at risk of not appearing for trial. For the foregoing reasons, the government respectfully requests that the Court uphold Judge Sagar's order that defendant be detained pending trial.