CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ERICA CHOI (Bar No. 302351)
(E-Mail: erica_choi@fd.org)
SHANNON COIT (Bar No. 298694)
(E-Mail: shannon_coit@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ASHLEIGH BROWN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>ASHLEIGH BROWN,<br><br>            Defendant. | Case No. 2:25-CR-780-SVW-2<br><br>**DEFENDANT ASHLEIGH BROWN'S MOTION TO DISMISS THE INDICTMENT**<br><br>**Hearing Requested: January 26, 2026, at 11:00 a.m.** |

To First Assistant United States Attorney Bilal Essayli and Assistant United States Attorneys Lauren Border, Clifford Mpare, and Khaldoun Shobaki:

Please take notice that on January 26, 2026, at 11:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Stephen V. Wilson, United States District Court Judge, Defendant Ashleigh Brown will bring for hearing on the following motion:

1
2
3
**MOTION**

4
Defendant Ashleigh Brown, by and through her counsel of record, Deputy

5
Federal Public Defenders Erica Choi and Shannon Coit, hereby moves for an order

6
dismissing the Indictment. This motion is made pursuant to Rule 12(b) of the Federal

7
Rules of Criminal Procedure and the First Amendment to the United States

8
Constitution, and is based on the attached memorandum of points and authorities, all

9
files and records in this case, and any further information and argument that may be

10
presented to the Court.

11
Respectfully submitted,

12
CUAUHTEMOC ORTEGA
Federal Public Defender

13

14
DATED:  December 30, 2025          By  /s/ Erica Choi

15
ERICA CHOI
SHANNON COIT

16
Deputy Federal Public Defenders

17
Attorney for ASHLEIGH BROWN

18
19
20
21
22
23
24
25
26
27
28

2

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 2

III. OFFENSES CHARGED ...................................................................................... 3

IV. ARGUMENT ....................................................................................................... 5

      A.    The Indictment Fails to Allege Essential Elements of the Crimes
            Charged ...................................................................................................... 5

      B.    The Indictment Must Be Dismissed Because 18 U.S.C. § 119 is
            Facially Unconstitutional ........................................................................ 8

            1.    Section 119 criminalizes speech protected by the First
                    Amendment. ................................................................................ 9

            2.    The statute is overbroad on its face. ............................................ 12

            3.    Section 119 is a content-based restriction on free speech that
                    fails strict scrutiny. .................................................................... 14

      C.    The Indictment Must Be Dismissed Because § 119 Is Unconstitutional
            As the Government Has Applied it to Ms. Brown .................................... 18

      D.    The Indictment Also Must be Dismissed Because it Does Not Specify
            the "Crime of Violence" Ms. Brown Allegedly Intended to Incite. .......... 19

      E.    Count One must be dismissed for the same reasons as Count Two. ......... 21

V. CONCLUSION ..................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*Animal Legal Def. Fund v. Wasden,*
   878 F.3d 1184 (9th Cir. 2018) ................................................................. 18

*Ashcroft v. Free Speech Coal.,*
   535 U.S. 234 (2002) .......................................................................... 7, 16

*Askins v. DHS,*
   899 F.3d 1035 (9th Cir. 2018) ............................................................... 18

*Bible Believers v. Wayne Cty.,*
   805 F.3d 228 (6th Cir. 2015) .......................................................... 10, 11

*Brandenburg v. Ohio,*
   395 U.S. 444 (1969) ................................................................... *passim*

*Brayshaw v. City of Tallahassee,*
   709 F. Supp. 2d 1244 (N.D. Fla. 2010) .............................................. 10, 16

*Broadrick v. Oklahoma,*
   413 U.S. 601 (1973) ............................................................................. 8

*Brown v. Ent. Merchants Ass'n,*
   564 U.S. 786 (2011) ........................................................................... 17

*Carey v. Brown,*
   447 U.S. 455 (1980) ....................................................................... 8, 15

*Chaplinsky v. New Hampshire,*
   315 U.S. 568 (1942) ............................................................................. 8

*Counterman v. Colorado,*
   600 U.S. 66 (2023) .............................................................................. 9

*Foti v. City of Menlo Park,*
   146 F.3d (9th Cir. 1998) ...................................................................... 15

*Gooding v. Wilson,*
   405 U.S. 518 (1972) ............................................................................. 8

*Hamling v. United States,*
   418 U.S. 87 (1974) ............................................................................. 19

i

## TABLE OF AUTHORITIES

Page(s)

*Hess v. Indiana*,
    414 U.S. 105 (1973) ....................................................................... 10, 11

*Members of City Council of L.A. v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ............................................................................ 8

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ............................................................................ 8

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ...................................................................... 15, 17

*S.O.C. Inc. v. County of Clark*,
    152 F.3d 1136 (9th Cir.1998) .......................................................... 15

*Sessions v. Dimaya*,
    548 U.S. 148 (2019) .......................................................................... 20

*Sheehan v. Gregoire*,
    272 F. Supp. 1135 (W.D. Wash. 2003) ..................................... *passim*

*Watts v. United States*,
    394 U.S. 705 (1969) ......................................................................... 8, 9

*United States v. Alvarez*,
    60 F.4th 554 (9th Cir. 2023) ............................................................ 20

*United States v. Baugh*,
    187 F.3d 1037 (9th Cir. 1999) ............................................................ 8

*United States v. Buddenberg*,
    2010 WL 2735547 (N.D. Cal. Jul. 12, 2010) ................................... 19

*United States v. Dominguez-Maroyoqui*,
    748 F.3d 918 (9th Cir. 2014) ........................................................... 20

*United States v. Lo*,
    231 F.3d 471 (9th Cir. 2000) ........................................................... 21

*United States v. Qazi*,
    975 F.3d 989 (9th Cir. 2020) .............................................................. 6

*United States v. Santos*,
    553 U.S. 507 (2008) ............................................................................ 7

ii

### TABLE OF AUTHORITIES

Page(s)

*Virginia v. Black*,
   538 U.S. 343 (2003) ................................................................ 5

*Wong Tai v. United States*,
   273 U.S. 77 (1927) ................................................................ 21

**Federal Statutes**

18 U.S.C. § 16(a) ................................................................ 19

18 U.S.C. § 16(b) ................................................................ 20

18 U.S.C. § 111 ................................................................ 17, 20

18 U.S.C. § 115 ................................................................ 9

18 U.S.C. § 119 ................................................................ *passim*

18 U.S.C. § 371 ................................................................ 1, 21

18 U.S.C. § 1114 ................................................................ 4, 17

18 U.S.C. § 1512 ................................................................ 17

**United States Constitution**

U.S. Const. amend. I ................................................................ 2, 8

**Rules**

Fed. R. Crim. P. 7 ................................................................ 19

Fed. R. Crim. P. 12 ................................................................ 1, 2

**State Statutes**

Wash. Rev. Code §§ 4 24 680–700 ................................................................ 12

**Other**

American Heritage Dictionary (5th ed. 2002),
   https://ahdictionary.com/word/search.html?q=make ................................................................ 6

Merriam-Webster Online (2025),
   https://www.merriam-webster.com/dictionary/make ................................................................ 5, 6

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Michael Scherer, et al., *Top Trump Officials Are Moving Onto Military Bases*, The
    Atlantic (Oct. 30, 2025),
    https://www.theatlantic.com/politics/archive/2025/10/trump-officials-military-
    housing-stephen-miller/684748/ ............................................................................. 7

Emily Crane and Hannah Fierick, *Mayor-Elect Zohran Mamdani to Leave Rent-
    Stabilized Queens Apartment—And Move Into Gracie Mansion*, N.Y. Post (Dec.
    8, 2025), https://nypost.com/2025/12/08/us-news/mayor-elect-zohran-mamdani-
    to-ditch-rent-stabilized-queens-apartment-and-move-into-gracie-mansion/ ........ 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

Under Federal Rule of Criminal Procedure 12(b)(3) and the First Amendment, defendant Ashleigh Brown respectfully moves to dismiss the Indictment for failure to state an offense. The government has charged Ms. Brown with conspiring to publicly disclose the personal information of a federal agent under 18 U.S.C. § 371 (Count 1), and publicly disclosing the personal information of a federal agent under 18 U.S.C. § 119(a) (Count 2). Section § 119 is a rarely charged statute that criminalizes the publicizing of the home address and certain other information of federal officers and other covered individuals—commonly known as "doxxing." The charge here suffers from numerous statutory, constitutional, and other flaws.

*First*, § 119 makes it a crime to "knowingly make [certain] restricted personal information . . . publicly available." Because the criminal act is "mak[ing]" the information "publicly available," the statute does not apply to information that is *already* publicly available. And because the statute requires that the defendant act "knowingly," it applies only when the defendant *knows* that she is disclosing information that was not previously publicly available. The indictment does not allege either of these essential elements and must be dismissed for that reason alone. Indeed, it is clear that the government *cannot* allege these elements. The charges are based on allegations that Ms. Brown discussed the home address of an ICE agent, but that agent's address was and remains publicly available from numerous sources.

*Second*, and independently, the indictment must be dismissed because § 119 is unconstitutional, both facially and as the government has applied it to Ms. Brown. The statute purports to criminalize pure speech—the act of sharing information. As courts have found with respect to similar "anti-doxxing laws," § 119 is facially unconstitutional because it punishes a substantial amount of protected speech and enacts content-based restrictions that do not satisfy strict scrutiny.

And the statute is especially unconstitutional as the government has used it here. The charges in this case are based on a video stream in which Ms. Brown and others

1

recorded an ICE officer who appeared to be performing official duties. She then, at most, advised members of the public the officer lived in their neighborhood and encouraged them to protest. The government cannot censor this type of information sharing. And it is particularly chilling that the government targeted Ms. Brown because of speech that protested the government's own misconduct. Her statements were not, and cannot constitutionally be, a crime.

Finally, the charges also suffer from an additional flaw. The indictment alleges that Ms. Brown intended to incite a "crime of violence" without specifying which crime she supposedly intended to incite. This omission raises serious questions about whether the grand jury was properly instructed on the meaning of a "crime of violence. But just as important, the failure of the indictment to specify which crime of violence Ms. Brown allegedly intended to incite has left her without the fair notice of the crime charged. For all of these reasons, the indictment should be dismissed.

## II. FACTUAL BACKGROUND

Ms. Brown is a community activist and protestor of ICE mass deportations. During the summer months of 2025, she attended protests in front of the federal building in downtown Los Angeles. She and others posted videos on Instagram speaking out against ICE enforcement in Los Angeles.

On September 23, 2025, the government indicted Ms. Brown and two co-defendants with conspiracy to publicly disclose the personal information of a federal agent under 18 U.S.C. § 119 (Count One), and publicly disclosing the personal information of a federal agent under 18 U.S.C. § 119 (Count Two).

According to the government, Ms. Brown and her co-defendants followed ICE Deportation Officer Rogelio Reyes Huitzilin[1] to his personal residence. Indictment, p. 3. The government claims the defendants posted a live video on Instagram following

---

[1] The Complaint refers to the federal officer as "R.R." and the Indictment refers to him as "R.H." It appears the officer's legal name is Rogelio Reyes, and he also uses the alias Rogelio Huitzilin.

2

Officer Reyes, and shouted to bystanders their "neighbor is ICE," "la migra lives here," and "ICE lives on your street and you should know." Indictment, p. 3. The government further claims defendants publicly disclosed Officer Reyes's personal address[2] on Instagram and told viewers to "come on down." *Id.*

### III. OFFENSES CHARGED

The charges in this case center around the federal "anti-doxxing" statute, 18 U.S.C. § 119. Count Two charges the defendants with violating § 119. And Count One charges them with conspiring to violate § 119. It is therefore important to understand that statute's scope.

Beginning with the *actus reus*, § 119 purports to criminalize "knowingly mak[ing] restricted personal information about a covered person, or a member of the immediate family of that covered person, publicly available." 18 U.S.C. § 119(a). As discussed in more detail below, by requiring that the defendant *make* "restricted" personal information publicly available, the statute is best read to apply only to information that was *not already* publicly available. Under that reading, the indictment must be dismissed because it does not allege that Officer Reyes's home address was not publicly available—to the contrary, it is clear Officer Reyes's address was available from numerous public sources. Exhibit A (free Internet search result for "Rogelio Huitzilin" on https://www.fastpeoplesearch.com); Exhibit B (free search result for "Rogelio Reyes" on https://www.411.com); Exhibit C (free search result for "Rogelio Reyes" on https://www.spokeo.com); Exhibit D (Accurint Property Assessments, Deeds, & Mortgages Report); Exhibit E (publicly available property

---

[2] The defense maintains that Officer Reyes's home address was never published or announced. Rather, Ms. Brown stated *her* location—a different address on the street where Officer Reyes resides.

documents from the Los Angeles County Recorder's Office); Exhibit F (parcel data and property line information from https://landglide.com/).[3]

But based on the indictment, it appears the government does not believe that § 119 is limited to non-public information. If that were true, the statute would cover an incredibly broad range of conduct. The statute defines covered person to include "any officer or employee of the United States or of any agency in any branch of the United States government." 18 U.S.C. § 119(b)(2)(A) ("covered person" includes "individual[s] designated in 18 U.S.C. § 1114"). And although the definition of "restricted personal information" includes private information like Social Security numbers, it also includes information commonly available in phone books, online directories, and other publicly accessible sources: home addresses, home phone numbers, mobile phone numbers, personal emails, and home fax numbers. *Id.* § 119(b)(1).[4]

The statute also contains a *mens rea* requirement. The disclosure of the personal information must be made:

> (1) with the intent to threaten, intimidate, or incite the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person; or

> (2) with the intent and knowledge that the restricted personal information will be used to threaten, intimidate, or facilitate the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person.

18 U.S.C. § 119(a)(1)–(2).

---

[3] While the exhibits are public records and free Internet search results readily accessible to the public, they are filed under seal based on the government's position in this case.

[4] The definition reads, "the term 'restricted personal information' means, with respect to an individual, the Social Security number, the home address, home phone number, mobile phone number, personal email, or home fax number of, and identifiable to, that individual."

Again, it is important to recognize what the statute does not require. Although the statute refers to an "intent to threaten," it is not limited to what the Supreme Court has called "true threats"—that is, "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual." *Virginia v. Black*, 538 U.S. 343, 359 (2003). And although the statute refers to an "intent . . . to incite the commission of a crime of violence," it does not incorporate requirements that are necessary for an incitement statute to be constitutionally permissible: it does not require that the disclosure of the personal information be "directed to inciting or producing *imminent* lawless action," nor does it require that the disclosure be "likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969) (emphasis added).

## IV. ARGUMENT

A court must dismiss a charge if it "fail[s] to state an offense." Fed. R. Crim. Pr. 12(b)(3)(B). A charge fails to state an offense when the conduct alleged in the indictment is not a crime and/or when the Constitution precludes the prosecution. Where a constitutional challenge to a charge is made on the grounds that the charge conflicts with the First Amendment's guarantees of free thought, belief, and expression, the trial court should subject the legal sufficiency of the indictment to exacting scrutiny.

## A.    The Indictment Fails to Allege Essential Elements of the Crimes Charged

Although this prosecution raises weighty First Amendment issues, the indictment can—and should—be dismissed on narrower statutory grounds. The indictment fails to allege that Officer Reyes's address was not previously publicly available, much less that Ms. Brown knew that she was the one putting this information into the public domain. Because the indictment is missing these essential elements, it must be dismissed.

Section § 119 applies to individuals who "knowingly make[] restricted personal information . . . publicly available." 18 U.S.C. § 119(a). To "make" information

5

publicly available means to *cause* it to become publicly available. *Make*, Merriam-Webster Online (2025) (defining "make" as "to cause to happen," "to cause to exist," or "to cause to be or become")[5]; *Make*, American Heritage Dictionary (5th ed. 2002) (defining "make" as "to cause to exist or happen," to "bring about," or "to cause to be or become").[6] In other words, § 119 targets the act of publicly revealing personal information that was not previously public. It does not apply where the information was *already* publicly available, because one cannot "make" public what is already public. This conclusion is reinforced by the fact that the statute uses the term "*restricted* personal information." *See* 18 U.S.C. § 119. Personal information is not "restricted" if it can be found by any member of the public through a simple search.

Beyond the requirement that the information be non-public, the statute additionally requires that the defendant "*knowingly* make[]" the information "publicly available." In other words, the defendant must *know* that her conduct is what brought the information into the public domain. Disclosing information without knowing whether it is already publicly available does not violate the statute.

The indictment in this case is defective because it does not allege these elements. *See* Indictment. It does not allege that Officer Reyes's address was not already publicly available. Nor does it allege that Ms. Brown knew that her statements were what made the address public. Indeed, it appears the government *cannot* allege these elements because cursory searches reveal that Officer Reyes's home address is available from numerous sources readily accessible to the general public. *See* Exhs. A-F. Because the indictment fails to allege these essential elements, dismissal is required. *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020) ("automatic dismissal" is required when an indictment "omit[s] an essential element").

---

[5] https://www.merriam-webster.com/dictionary/make (last visited December 30, 2025).

[6] https://ahdictionary.com/word/search.html?q=make (last visited December 30, 2025).

6

Although the statutory text alone requires dismissal, interpreting § 119 to apply only to non-public information is necessary to avoid the serious First Amendment concerns that would be raised by attempting to criminalize discussion of information that is already publicly known. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002) ("The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere."). Both this requirement and the additional requirement that the defendant *knowingly* be the one to make the information public ensures that individuals are not subject to felony prosecution for simply repeating information they learned from the news media or other public sources. This guardrail is important, because the location where government officials reside is often a matter of significant public concern. *See, e.g.*, Michael Scherer, et al., *Top Trump Officials Are Moving Onto Military Bases*, The Atlantic (Oct. 30, 2025);[7] Emily Crane and Hannah Fierick, *Mayor-Elect Zohran Mamdani to Leave Rent-Stabilized Queens Apartment—And Move Into Gracie Mansion*, N.Y. Post (Dec. 8, 2025).[8]

This interpretation of § 119 is also dictated by the rule of lenity, which requires that "ambiguous criminal laws . . . be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 513 (2008). It is at least ambiguous whether the statutory phrase "make[] restricted information . . . publicly available" refers only to the initial public disclosure of the information or whether it encompasses *all* public discussion of the information—even if it has long been in the public domain. Because the first interpretation is "more defendant-friendly" than the second, "the rule of lenity dictates that it should be adopted." *Id.* at 514. Under that interpretation, the indictment must be dismissed.

---

[7] https://www.theatlantic.com/politics/archive/2025/10/trump-officials-military-housing-stephen-miller/684748/,

[8] https://nypost.com/2025/12/08/us-news/mayor-elect-zohran-mamdani-to-ditch-rent-stabilized-queens-apartment-and-move-into-gracie-mansion/

**B.    The Indictment Must Be Dismissed Because 18 U.S.C. § 119 is Facially Unconstitutional**

The indictment also must be dismissed because § 119 violates the First Amendment. The First Amendment prohibits Congress from enacting laws "abridging the freedom of speech, . . . or the right of the people peaceably to assemble." U.S. Const. amend. I. Exceptions to this rule are "well-defined and narrowly limited," and § 119 does not fit any of them. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942).

Political speech is core First Amendment speech, critical to the functioning of our democratic system. *Carey v. Brown,* 447 U.S. 455, 467 (1980). And "the practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process." *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 907 (1982). For this reason, the First Amendment applies with particular force to protest activities. *United States v. Baugh,* 187 F.3d 1037, 1042 (9th Cir. 1999).

Any statute purporting to criminalize speech must be interpreted in light of the commands of the First Amendment. *Watts v. United States,* 394 U.S. 705, 707 (1969). Under the doctrine of First Amendment overbreadth, a statute is unconstitutional in its entirety if it is written so broadly that it captures a substantial amount of protected free speech. *Members of City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 796-801 (1984). This is true even if the statute could be legitimately applied to some subset of speech, and even if it could be legitimately applied to the specific party raising an overbreadth challenge. *Id.* at 798. This rule is necessary to avoid the chilling effects caused by overbroad regulations of speech. *Id.* ("[T]he very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected."). *Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973), *Gooding v. Wilson,* 405 U.S. 518, 520-21 (1972). In criminal cases, where "even minor punishments can chill protected speech," facial challenges have particular value.  *Free Speech Coal.*, 535 U.S. at 244.

8

1.    **Section 119 criminalizes speech protected by the First
Amendment.**

Section 119 is facially overbroad because it criminalizes a substantial amount of
protected expression in relation to its legitimate sweep. Under well-established First
Amendment doctrine, a government may criminalize speech of the nature addressed by
§ 119 only when it rises to the level of a "true threat" or when it is likely to incite
*imminent* lawless action. But § 119 goes well beyond that. It applies to all threats, not
just "true" ones. It criminalizes "intimidation," a term that can encompass conduct that
is not a threat at all. And it applies to all manner of incitement, not just incitement that
is likely to produce imminent lawlessness. The statute is therefore unconstitutionally
overbroad.

a.    **The statute proscribes speech that does not rise to the level
of a true threat.**

"True threats" are "statements where the speaker means to communicate a
serious expression of an intent to commit an act of unlawful violence to a particular
individual or group of individuals." *Black*, 538 U.S. at 359. True threats do not include
"political hyperbole." *Watts*, 394 U.S. at 706-07. And for a threat to be a true threat, the
government must allege and prove that "the speaker [wa]s aware that others could
regard his statements as threatening violence and delivered them anyway." *Counterman
v. Colorado*, 600 U.S. 66, 79 (2023).

Section 119 contains none of these constitutionally required limitations. For one
thing, unlike other threats statutes, the *actus reus* of § 119 does not require making an
actual threat.[9] Instead, the statute criminalizes the act of making a defined set of
personal information "publicly available." But as courts addressing (and striking down)
similar anti-doxxing statutes have explained, "[s]imply publishing an officer's phone
number, address, and e-mail address is not in itself a threat or serious expression of an

---

[9] *Compare, e.g.*, 18 U.S.C. § 115(a)(1)(B) (making it a crime to "threaten[] to
assault, kidnap or murder, a United States official").

intent to commit an unlawful act of violence." *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244, 1248 (N.D. Fla. 2010). "[U]nlike the cross-burning proscribed in *Virginia v. Black*, publishing personal information of police officers does not have a 'long and pernicious history as a signal of impending violence,' which would allow [courts] to regard it as a 'true threat.'" *Id.*

Nor does § 119's intent requirement transform the act of publishing an address into a "true threat." As one court correctly explained, "a true threat does not turn on the subjective intent of the speaker." *Sheehan v. Gregoire*, 272 F. Supp. 1135, 1141 (W.D. Wash. 2003). Thus, "[m]erely publishing an officer's address . . . even with the intent to intimidate, is not a 'true threat' as defined in constitutional law jurisprudence." *Brayshaw*, 709 F. Supp. 2d at 1248.

> ### b.    The statute proscribes speech that does not incite imminent lawless action.

The Constitution ordinarily protects even speech that advocates for violence or lawbreaking. As the Supreme Court explained in *Brandenburg*, "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation" *except* in the limited circumstance when "such advocacy is directed to inciting or producing *imminent* lawless action" *and* "is likely to incite or produce such action." 395 U.S. at 447 (emphasis added).

These strict criteria are necessary because "incitement to disorder is commonly a hair's-breadth away from political 'advocacy'—and particularly from strong protests against the government and prevailing social order." *Counterman*, 600 U.S. at 81. Requiring the government to satisfy the *Brandenburg* test "ensure[s] that efforts to prosecute incitement [do] not bleed over, either directly or through a chilling effect, to dissenting political speech at the First Amendment's core." *Id.* Accordingly, to satisfy the standard for incitement, the expressive conduct (i) must be directed at specific individuals, *Hess v. Indiana*, 414 U.S. 105, 109 (1973), (ii) must "specifically advocate for listeners to take . . . action," *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 244-46

(6th Cir. 2015) (citing *Hess*, 414 U.S. at 109); (iii) must be uttered with the specific intent "to produce . . . imminent disorder," *Hess*, 414 U.S. at 109; and (iv) the action must be likely to occur, *Brandenburg*, 395 U.S. at 448.

Section 119 is unconstitutionally overbroad because does not contain these limitations. The statute does not require that the release of the information be targeted at specific individuals, *Hess*, 414 U.S. at 109, it does not require that the speaker specifically advocate for listeners to take action, *Bible Believers*, 805 F.3d at 244-46, it does not require that the commission of the crime of violence be "imminent," *Brandenburg*, 395 U.S. at 447, and it does not require that the act of publicizing the information be "likely" to cause the crime of violence to be committed, *id.*

To provide a concrete illustration, suppose someone posted on an online forum: "The President lives at 1600 Pennsylvania Avenue. I hope someone hurts him some day." If the person who made the post subjectively intended for it to inspire someone to attack the President, all of the elements of § 119 would be met—the poster "knowingly ma[de] restricted personal information about a covered person . . . publicly available with the intent to . . . incite the commission of a crime of violence against that covered person." 18 U.S.C. § 119(a)(1). But the post would plainly not satisfy *Brandenburg*'s requirements: it was not directed to a specific audience, it did not specifically advocate for listeners to take action, it was not directed to inciting imminent action, and it was not likely to result in imminent violence.

It is precisely to avoid these problems that *Brandenburg* requires that the prerequisites of imminence and the likelihood of actually inciting lawless action be written into the text of the statute. "A statute that fails to draw th[ese] distinction[s] impermissibly intrudes upon the freedoms guaranteed by the First . . . Amendment[]" and "sweeps within its condemnation speech which our Constitution has immunized from governmental control." 395 U.S. at 448. Because § 119, "by its own words . . . purports to punish mere advocacy"—indeed, it purports to punish even hidden

subjective intents unaccompanied by actual advocacy—it "falls within the condemnation of the First . . . Amendment[]." *Id.* at 449.

### 2.    The statute is overbroad on its face.

Section 119 is written in the disjunctive, criminalizing the publication of personal information of covered persons "with the intent to threaten, intimidate, *or* incite the commission of a crime of violence," under (a)(1), *or* "with the intent and knowledge that the restrictive personal information will be used to threaten, intimidate, *or* facilitate the commission of a crime of violence" under (a)(2). 18 U.S.C. § 119 (emphasis added).

Each one of those prongs is, on its own, enough to satisfy the statute. But all of the prongs sweep well beyond true threats and incitement to reach lawful, protected speech. The statute is therefore overbroad on its face.

**Threaten**. Although the statute speaks of intent to threaten, its language is not limited to "true threats." In *Sheehan v. Gregoire*, the court struck down a very similar statute for precisely this reason.

The statute in that case read:

> A person or organization shall not, with the intent to harm or intimidate, sell, trade, give, publish, distribute, or otherwise release the residential address, residential telephone number, birthdate, or social security number of any law enforcement-related, corrections officer-related, or court-related employee or volunteer, or someone with a similar name, and categorize them as such, without the express written permission of the employee or volunteer unless specifically exempted by law or court order.

Wash. Rev. Code §§ 4 24 680–700. The plaintiff in *Sheehan* operated a website, www.justicefiles.org, which criticized police officers. But out of fear of prosecution, he was forced to remove the home addresses, home telephone numbers, birthdates, and social security numbers of all law-enforcement related, and court-related employees or volunteers from his website—information he was constitutionally entitled to share. 272 F. Supp. 2d at 1139.

12

1       The court rejected the State's argument that the statute was permissible because

2   it prohibited only true threats. 272 F. Supp. 2d at 1141. It explained that releasing

3   personal identifying information is not the type of speech that has "a long and

4   pernicious history as a signal of impending violence." *Sheehan*, 272 F. Supp. 2d at

5   1143. And it noted that the State had "cite[d] no authority for the proposition that

6   truthful lawfully-obtained, publicly-available personal identifying information

7   constitutes a mode of constitutionally proscribable speech." *Id.* Rather, it held,

8   "disclosing and publishing information obtained elsewhere is precisely the kind of

9   speech that the First Amendment protects." *Id.*

10      Here, as in *Sheehan*, 18 U.S.C. § 119 proscribes pure constitutionally-protected

11  speech. The type of speech at issue is precisely the same: the home address, social

12  security number, home phone number, and personal information of certain individuals.

13  That type of information is publicly available on public databases and websites. *See*

14  Exhs. A-F. Releasing truthful lawfully-obtained, publicly available personal

15  information is constitutionally protected speech.

16      **Intimidate.** The "intent to intimidate" prong of § 119 suffers from similar

17  problems. For one thing, "[i]ntimidation in the constitutionally proscribable sense of

18  the word is a type of true threat, where a speaker directs a threat to a person or group of

19  persons with the intent of placing the victim in fear of bodily harm or death." *Black*,

20  538 U.S. at 344. But the statute does not define the phrase "intent to intimidate" in a

21  way that limits it to true threats. It is overbroad for that reason alone.

22      But beyond that, the language "with the intent to intimidate" is unconstitutionally

23  vague. *See Sheehan*, 272 F. Supp. 2d at 1149. The *Sheehan* court reached the same

24  conclusion. As it explained with respect to the statute there, the operative terms ("with

25  intent to harm or intimidate") lacked clarity and invited subjective or discriminatory

26  enforcement. *Id.*

27      Imagine, for example, that someone posted in an online forum" "Officer Doe, I

28  know that the offensive messages I've received from the email address

JohnDoe@gmail.com came from you. If you continue to send them, I will call your supervisor." There can be no dispute that this post consists entirely of constitutionally protected speech. But § 119 could easily be read to criminalize it: the person who posted this message made the officer's restricted personal information publicly available and did so with an intent "to intimidate"—to intimidate the officer into ceasing the offensive messages. Because the statute's failure to define the word "intimidate" does not provide fair notice of when otherwise ordinary speech could put the speaker at risk of criminal prosecution, it is unconstitutionally vague. *Sheehan*, 272 F. Supp. 2d at 1149 ("[A] statute that demands self-censorship—that one police one's own thoughts and subjective intent—impermissibly sacrifices the public interest in the free exchange of speech and ideas.").

**Incite the commission of a crime of violence**. As discussed above, speech advocating illegal acts can be prohibited only when (1) it "is directed to inciting or producing *imminent* lawless action" *and* (2) it is actually "likely to incite or produce such action." *Brandenburg*, 395 U.S. at 447 (emphasis added). For the reasons already given, § 119 is unconstitutionally overbroad because it does not contain these limitations.

**"With the intent and knowledge that the restricted personal information will be used to threaten, intimidate, or facilitate the commission of a crime of violence."** The requirements of subsection (a)(2) of § 119 are even lower than (a)(1) in that they allow prosecution of this overbroad statute on an aiding-and-abetting theory. They therefore carry all the same constitutional problems as (a)(1), with the added problem that they put the defendant a step removed from the threatening or violent acts.

**3.    Section 119 is a content-based restriction on free speech that fails strict scrutiny.**

Separate from the fact that § 119 is facially overbroad, it also violates the First Amendment because it creates content-based restrictions on speech that fail strict

14

scrutiny. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992) (assuming statute not overbroad but striking it down as content-based).

### a.    The statute is a content-based restriction.

A statute is content-based when it prohibits otherwise permitted speech based solely on the subjects addressed by the speech. *R.A.V.*, 505 U.S. at 381. When an individual enforcing a statute must examine the content of the speech to determine whether the statute governs, the statute is content-based. *S.O.C. Inc. v. County of Clark,* 152 F.3d 1136, 1145 (9th Cir.1998); *Foti v. City of Menlo Park*, 146 F.3d at 629, 635-36 (9th Cir. 1998).

Section 119 is content-based on its face. The statute prohibits constitutionally protected speech—revealing truthful lawfully-obtained, publicly-available personal identifying information—based solely on the subject addressed by that speech. 18 U.S.C. § 119. The statute does not criminalize, for example, revealing the personal identifying information of a state police officer or ordinary citizen. It applies only to information about certain other individuals. This is a content-based restriction.

### b.    The statute does not serve a compelling state interest.

A content-based restriction on free speech is constitutional only if it is narrowly tailored to serve a compelling state interest. *S.O.C., Inc.,* 152 F.3d at 1145-46. And the government cannot suppress speech based on its content "when the speaker intends to communicate[,] but permit[] the same speech if incidental to another activity." *Foti,* 146 F.3d at 639. That is, speech does not transform from protected into unprotected solely based on the intent of the speaker. *Id.* at 640.

Protecting law enforcement from potential threats, intimidation, or violence is a legitimate government aim. But "even the most legitimate goal may not be advanced in a constitutionally impermissible manner." *Brown*, 447 U.S. at 464-65. "Ordinarily," the proper deterrents "to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech." *Free Speech Coal.*, 535 U.S. at 245 (internal quotation marks omitted).

15

Section 119 does not punish threats or violence actually inflicted on federal agents as a result of the dissemination of their home addresses. Rather, the statute prohibits the publishing of truthful information that *might* be used to threaten, intimidate, or incite a crime. Because this "curtailment of free speech" is not "necessary to the solution" of prohibiting violence, it is not narrowly tailored to the government's interest. *Brown*, 564 U.S. at 799 (internal quotation marks omitted); *see Free Speech Coal.*, 535 U.S. at 252-53 ("The objective is to prohibit illegal conduct, but this restriction goes well beyond that interest by restricting the speech available to law-abiding adults.").

In *Brayshaw*, the court found that a similar statute[10] was not narrowly tailored because it "fail[ed] to require there be a credible threat of danger to the officer, and thus fail[ed] to proscribe 'true threats.'" 709 F. Supp. 2d at 1249. The statute was therefore "overinclusive in proscribing speech that is not a true threat," and "underinclusive both in its failure to prohibit dissemination of the same information by other entities to third-parties who do intend to harm or intimidate officers, and in its failure to punish parties who actually wish to harm or intimidate police officers and obtain the officer's identifying information."

The reasoning of *Brayshaw* applies here. Section 119 impermissibly deters free expression. Ms. Brown's Instagram accounts communicate political news and views, as well as truthful information about ICE's actions in the community, with an eye towards

---

[10] The statute, which was found unconstitutional, stated:

Any person who shall maliciously, with intent to obstruct the due execution of the law or with the intent to intimidate, hinder, or interrupt any law enforcement officer in the legal performance of his or her duties, publish or disseminate the residence address or telephone number of any law enforcement officer while designating the officer as such, without authorization of the agency which employs the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in *s. 775.082* or *s. 775.083*.

*Brayshaw*, 709 F. Supp. 2d at 1247.

promoting accountability. Her online posts are political in nature and address matters of public significance.

The government cannot censor this speech based solely on the intent of the speaker. *Foti,* 146 F.3d at 639. But the statute at issue here does exactly that: whether publishing Officer Reyes's personal address on Instagram constitutes a crime turns solely on Ms. Brown's subjective intent. As explained, Officer Reyes's home address is already publicly available on numerous websites. *See* Exhs. A-F. And there is no dispute that the same statements Ms. Brown made would not be a crime if her intent was only to lead people to protest outside Officer Reyes's house.

If providing the same information, in the same manner, to the same audience, would be lawful if Ms. Brown subjectively intended to inspire a protest, the speech itself cannot possibly be so "dangerous" that censoring it satisfies strict scrutiny. Because the law (and Constitution) recognize that publicly revealing an officer's home address is not categorically dangerous speech, prohibiting that speech in some circumstances but not others fails narrow tailoring.

Importantly, the government has numerous other tools for punishing threats, intimidation, or the commission of violent crimes against federal officers and employees. For example, 18 U.S.C. § 111 proscribes assaulting, resisting, impeding, or interfering with federal officers, including attempts. 18 U.S.C. § 1512 proscribes tampering with a witness, victim, or informant. And 18 U.S.C. § 1114 protects officers and employees of the United States from murder, attempted murder, and manslaughter. This "existence of adequate content-neutral alternatives thus undercuts significantly any defense of . . . a statute" that targets pure speech. *R.A.V.*, 505 U.S. at 395 (alteration and internal quotation marks omitted). Even assuming § 119 might provide additional protection, "the government does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 803 n.9 (2011). "Because there are various other laws at [the government's] disposal that would allow it to achieve its stated interests while burdening little or no

speech, [Section 119] is not narrowly tailored." *Animal Legal Def. Fund v. Wasden*,
878 F.3d 1184, 1205 (9th Cir. 2018) (internal quotation marks omitted).

## C.    The Indictment Must Be Dismissed Because § 119 Is Unconstitutional As the Government Has Applied it to Ms. Brown

Even if § 119 were not facially unconstitutional, the charges must be dismissed
because the statute is unconstitutional as applied in this case. The speech alleged as
overt acts in the indictment—"share the live," "get it out," "share ICE is in Baldwin
Park," "neighbor is ICE," "la migra lives here," "lCE lives on your street and you
should know"—does not come anywhere close to constituting threats of violence or
incitement under *Brandenburg* test. This is core protected speech, particularly since it
occurred as part of a politically motivated protest.

The First Amendment does not allow the government to prohibit individuals
from warning members of the public that officers who might pose a danger to them
reside nearby. And it is well-established that the First Amendment protects the right to
disseminate information about the activities of law enforcement, including by filming
them, when they appear to be performing their official duties.[11] *Askins v. DHS*, 899
F.3d 1035, 1044 (9th Cir. 2018). That the filming here occurred on public streets,
where the government's ability to regulate speech is "sharply circumscribed," *id.*,
makes it even clearer that Ms. Brown's conduct was constitutionally protected. At the
very least, she lacked fair notice that her protest-related speech could subject her to
criminal prosecution.

---

[11] Officer Reyes left the Metropolitan Detention Center, a federal building, in the middle of the day while driving an unmarked car with no license plates—the same type of vehicle that ICE officers have frequently used while performing official duties. *See* ECF 56 at 2-5. It therefore appeared to Ms. Brown that he was performing his official duties in public—a circumstance under which she had an unquestionable First Amendment right to film him. *Askins*, 899 F.3d at 1044.

**D.      The Indictment Also Must be Dismissed Because it Does Not Specify the "Crime of Violence" Ms. Brown Allegedly Intended to Incite.**

Beyond the statutory and First Amendment problems, the indictment must be dismissed for yet another reason: it alleges that Ms. Brown acted with "the intent to . . . incite the commission of a crime of violence" but does not specify which crime of violence she supposedly intended to incite.

The words used in the indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Merely parroting the language of the criminal statute is insufficient to inform of "what the defendants each said or did that constituted" the criminal course of conduct. *United States v. Buddenberg*, 2010 WL 2735547, *8 (N.D. Cal. Jul. 12, 2010). The statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is charged." *Hamling*, 418 U.S. at 117-18 (citation omitted); see also Fed. R. Crim. P. 7(c)(1) (indictment must contain a "statement of the essential facts constituting the offense charged").

The indictment alleges the defendants knowingly made publicly available the home address of R.H. "with the intent to threaten, intimidate, and incite the commission of a *crime of violence*," and "with the intent and knowledge that the restricted personal information would be used to threaten, intimidate, and facilitate the commission of a *crime of violence*," against R.H. Indictment, pp. 4-5 (emphasis added). But it fails to allege which "crime of violence" the defendants supposedly intended to incite the commission of (much less that someone watching the livestream was imminently likely to commit that offense).

This is no minor omission. "Crime of violence" is a technical legal term that encompasses a subset of offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a); *see id.* § 119(b)(3) ("the term 'crime of violence' has the meaning given in [18

19

U.S.C. § 16]").[12] To determine whether a given offense qualifies as a crime of violence, courts must apply the "categorical approach" which turns on whether the "least egregious conduct" criminalized by the offense categorically matches the definition in § 16(a). *See United States v. Alvarez*, 60 F.4th 554, 558 (9th Cir. 2023).

Because the categorical approach does not depend on any specific defendant's conduct, it can sometimes lead to counterintuitive results. Relevant here, for example, generic assault on a federal officer under 18 U.S.C. § 111(a) does *not* qualify as a crime of violence. *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921-22 (9th Cir. 2014).

To properly present the indictment to the grand jury, the government had to do more than simply claim that Ms. Brown intended to incite violence against Officer Reyes. As noted, some forms of violence against federal officers do not qualify as "*crimes* of violence." *See id.* Instead, the government needed to identify a specific offense that *does* qualify as a crime of violence and present evidence that Ms. Brown subjectively intended to incite the commission of *that* crime.

That the indictment does not specify any crime of violence suggests that the government failed to identify such an offense to the grand jury, much less explain to the grand jury that there is a legal distinction between intending to incite violence in the abstract and intending to incite "a *crime* of violence." This is concerning and warrants further inquiry by the Court.[13]

---

[12] 18 U.S.C. § 16(b) contains an alternate definition of the term "crime of violence" that became known as the "residual clause." However, the Supreme Court has held that the residual clause in § 16(b) is unconstitutionally vague. *Sessions v. Dimaya*, 548 U.S. 148 (2019). So an offense can be a crime of violence for purposes of § 119 only if it satisfies the separate definition in § 16(a).

[13] Depending on the government's response, Ms. Brown reserves the right to request the grand jury transcript and/or instructions, or to request that this Court review those materials, to determine whether the grand jury was properly instructed on the requirements for finding probable cause that Ms. Brown intended to incite a crime of violence.

But beyond that problem, the failure of the indictment to place Ms. Brown on notice of an essential element of the offense—*which* crime of violence it alleges she intended to incite—has left her unable to defend herself against the incitement charge. Just as a government cannot charge a conspiracy without identifying the crime that was the object of the conspiracy, it cannot charge Ms. Brown with intending to incite a crime of violence without specifying the crime of violence that was the object of her alleged intent. *See Wong Tai v. United States*, 273 U.S. 77, 80-81 (1927) (indictment charging conspiracy must at least "identify the offense which the defendants conspired to commit"); *see also United States v. Lo*, 231 F.3d 471, 481 (9th Cir. 2000) (even an indictment that listed the object of the conspiracy might still be "fatally defective" if it "omitted *any* explication whatever of the offense that is the object . . . other than a citation to the United States Code"). Because the indictment does not specify which crime of violence Ms. Brown allegedly intended to incite, it must be dismissed to the extent it relies on an incitement theory.

**E.    Count One must be dismissed for the same reasons as Count Two.**

Count One must be dismissed for the same reasons as Count Two. A person can be charged with conspiracy only if the object of the conspiracy is a valid federal offense. *See* 18 U.S.C. § 371 (rendering it unlawful to "conspire . . . to commit any offense against the United States"). Because § 119 is unconstitutional, both facially and as applied to Ms. Brown, it cannot serve as the basis for a conspiracy charge. So the conspiracy charge must be dismissed.

///

///

21

1

## V. CONCLUSION

2  For the foregoing reasons, Ms. Brown respectfully requests the Court dismiss the

3  indictment in its entirety.

4  Respectfully submitted,

5  CUAUHTEMOC ORTEGA
   Federal Public Defender

6

7  DATED:  December 30, 2025  By  /s/ Erica Choi

8  ERICA CHOI
   SHANNON COIT
9  Deputy Federal Public Defenders
   Attorney for ASHLEIGH BROWN
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28