CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ERICA CHOI (Bar No. 302351)
(E-Mail: Erica_Choi@fd.org)
SHANNON COIT (Bar No. 298694)
(E-Mail: Shannon_Coit@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ASHLEIGH BROWN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ASHLEIGH BROWN,<br><br>    Defendant. | Case No. 2:25-CR-780-SVW-2<br><br>**DEFENDANT ASHLEIGH BROWN'S MOTION TO COMPEL GRAND JURY MATERIALS**<br><br>**Hearing: January 26, 2026** |

    The defendant Ashleigh Brown, by and through her attorneys Deputy Federal Public Defenders Erica Choi and Shannon Coit, hereby submits this motion to compel the government to produce the grand jury materials. In the alternative, the Court should review the transcripts *in camera* to determine if the government misled the grand jury to obtain an indictment.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"[T]he grand jury continues to function as a barrier to reckless or unfounded charges. . . . Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance." *United States v. Mandujano*, 425 U.S. 564, 571 (1976) (cleaned up). Consisting of lay people, a grand jury can only perform its essential role as a "barrier to reckless or unfounded charges" – a right guaranteed by the Fifth Amendment – if the prosecutors fulfill *their duties*. Though given wide latitude in presenting their case to the grand jury, prosecutors may not mislead the grand jurors as to the facts or the applicable law. If the prosecutors fail at these obligations, then the grand jury transcripts necessarily become discoverable *Brady* material, and the indictment is at risk of being rendered defective.

Here, there are serious concerns about the government's presentation of both the facts and the law.

First, as to the factual presentation, the defense has particularized reason to believe the government presented false testimony to the grand jury. In the original indictment, the grand jury returned an indictment specifically finding defendants disclosed "the home address of R.H." (Count Two), and in furtherance of a conspiracy to dox him, disclosed "R.H.'s personal address." (Count One, Overt Act No. 5). Indictment pp. 3, 4. These are not ancillary facts. It is the entire crime.

Now, the government admits the doxxing never happened. As the government concedes in its Opposition to Motion to Dismiss, defendants never said Officer Huitizlin's address.[1] Yet the government presented testimony to the grand jury, clearly,

---

[1] The government's opposition to the motion to dismiss clarifies that the officer has changed his last name from Reyes ("RR") to Huitizlin ("RH". The reply therefore refers to him as such.

that defendants *had* said his address. Any false testimony was presented knowingly because the government knows exactly what defendants said -- defendants' statements were recorded on video, broadcast "live," and were preserved by the government. To the extent false testimony was presented to the grand jury, the government did so knowingly.

Second, as to the legal presentation, the government has made concessions in its Opposition to the Motion to Dismiss about what the law requires for this prosecution. There is good reason to believe the government also mis-instructed the grand jury.

These circumstances warrant disclosure of grand jury materials (the transcripts of the factual presentation, the legal instruction, and any colloquies between the grand jury and the government) to the defense before trial.[2] In the alternative, the Court should order the government to produce the materials for *in camera* review.

## II. RELEVANT FACTS

Ms. Brown and her co-defendants never publicized ICE Deportation Officer Robert Huitzilin's home address. It never happened. The government conceded this fact on January 12, 2026. Opp. to Motion to Dismiss, p. 4 n.4. Yet, the government has repeatedly misrepresented that fact in its case filings, to the Court, and undoubtedly to the grand jury.

On September 5, 2025, the government filed a Complaint against Ms. Brown and her co-defendants. Complaint, p. 1. In the Complaint, the government alleged the defendants followed Officer Huitzilan to his home in Baldwin Park, "**shouted DO R.R.'s personal home address**," and "live stream[ed] their actions on social media." Complaint ¶ 7 (emphasis added).

On September 10, 2025, at a bond hearing, the magistrate judge stated that according to the Complaint, "three females . . . began yelling and shouting in substance

---

[2] Defense counsel requested the grand jury transcript from the government, and the government has refused to produce them. Defense counsel made a narrower request for the legal instructions, and the government has not responded nor produced those materials to date.

3

and summary that the officer was an ICE agent and **shout[ed] his personal home address**." Audio Recording, Initial Appearance, *United States v. Ashleigh Brown* (Sept. 10, 2025), 9:10-9:14. The government did not correct the court or the record.

On September 25, 2025, at a bond reconsideration hearing, the magistrate judge again reiterated Ms. Brown was "**broadcasting this individual's residence**." Audio Recording, Bond Reconsideration Hearing, *United States v. Ashleigh Brown* (Sept. 25, 2025), 31:48-31:51. Again, the government did nothing to correct the court.

On September 23, 2025, the government filed an indictment alleging two counts: (1) conspiracy to publicly disclose the personal information of a federal agent, (2) and publicly disclosing the personal information of a federal agent. As to Count One, the indictment alleges the defendants agreed to: follow a federal agent to his personal address, "publicly disclose the personal address of the federal agent they followed on social media," and "encourage the viewers of their posts . . . to follow the federal agent to his . . . personal residence, in order to threaten, intimidate, and incite the commission of a crime of violence against that federal agent." In the overt acts, the grand jury alleged the defendants in fact "**publicly disclosed on the Instagram Accounts R.H.'s personal address**." Indictment, p. 3 (emphasis added).

In Count Two, the indictment alleges the defendants "knowingly made publicly available the following restricted personal information about a covered person, namely, **the home address of R.H.**" Indictment, p. 4 (emphasis added).

On January 12, 2026, in its opposition to a motion to dismiss, the government admitted defendants *never* disclosed Officer Huitizilin's address. On that basis, over Ms. Brown's objection, the government dismissed Count Two.

It appears the grand jury was gravely misled. The government either told the grand jury that Ms. Brown announced Huitizlin's actual address (by presenting false testimony), or instructed the grand jury that even though Ms. Brown didn't say his actual address, saying a neighbor's address is sufficient to indict (an erroneous instruction on the law). These are both bases to dismiss the indictment for prosecutorial

4

misconduct.

Furthermore, the government has now conceded Ms. Brown's statements were only illegal if they were "true threats" or incitement under the *Brandenberg* test. *See* Opp. Motion to Dismiss. It is extremely unlikely the government instructed the grand jury correctly on these issues. If the grand jurors asked questions on any of these points, the government's responses must be carefully examined, because they likely support a motion to dismiss.

### III. ARGUMENT

**A.   Rule 6 Permits Disclosure of Grand Jury Materials**

Disclosure of grand jury materials under Rule 6(e) is permitted "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(iii). The Court, in turn, is empowered to dismiss an indictment for nonconstitutional error "if it is established that the that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

Among violations that can infect an indictment, the Ninth Circuit has found dismissal appropriate when the government knowingly presented perjured testimony to the grand jury. *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974). Likewise, "flagrantly misleading" instructions having the potential to "deceive[] the grand jury in a significant way infringing on their ability to exercise independent judgment." *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir.) *overruled on other grounds by Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989). Because the independent functioning of the grand jury is critical to our criminal justice system, dismissal of an indictment is both a necessary and appropriate remedy when a prosecutor compromises the independence of the grand jury by deliberately presenting misleading evidence or misrepresenting the applicable law.

**B. The government presented false testimony to the grand jury.**

The grand jury found the defendants knowingly made publicly available "the home address of R.H." Indictment, p. 4. This is not a passing fact -- it is an essential element of the offense. If the grand jury heard that defendants said Officer Huitizilin's actual address, the indictment is based on false testimony. The government presented that testimony knowingly, because the defendants' statements were recorded and have been in the government's possession at all relevant times.

This is not a case where the defendants' statements were unclear. The exact statements -- the specific numerical addresses -- were recorded on video, broadcast "live" on social media, and preserved by the government. The government has known, even prior to the complaint being filed, that no one said Officer Huitizilin's address. But some witness apparently testified before the grand jury that defendants *did* specifically state "the home address of R.H." in violation of the law.

The defense is entitled to know what testimony was presented on this topic. If the government knowingly presented perjured testimony, that is a basis for dismissal of the Indictment. If that is *not* what happened, then the grand jury returned an indictment based on the government's erroneous instructions about the law.

**C. The government erroneously instructed or informed the grand jury about the law.**

"[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction." *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) (citing *Peralta*. 763 F.Supp. 14, 21 (S.D.N.Y.1991); *Bank of Nova Scotia,* 487 U.S. at 256).

In *United States v. Stevens*, the government erroneously informed the grand jury that relying on the advice of counsel was an affirmative defense, rather than negating the specific intent required to indict the defendant. 771 F. Supp. 2d 556, 568 (D. Md.

2011). "A grand juror explicitly asked about the legal implications of Stevens' reliance on the advice of others in responding to the FDA and whether it was relevant. The grand juror was essentially told that advice of counsel was not relevant to the decision to indict, but rather was an issue to be raised in defense at trial." *Id.* "The question went to the heart of the intent required to indict." *Id.* The incorrect answer either substantially influenced the decision to indict or, at the very least, create[d] grave doubt as to that decision." *Id.*

In *United States v. Peralta*, the prosecutor gave "erroneous and misleading" instructions the grand jury regarding the elements of constructive possession. 763 F. Supp. at 20. The government's theory before the grand jury and at trial was that defendants constructively possessed a gun and drugs. *Id.* at 19. "Thus, the grand jury's understanding of the (somewhat counterintuitive) concept of constructive possession was extremely important." *Id.* When the grand jury asked questions about the "use" required to indict, and the government made "misleading statements of the meaning of constructive possession." *Id.* at 20. As such, the court found there was a "high probability, if not a certainty, that the grand jury in this case was misled into thinking that constructive possession was equivalent to the mere *physical possibility* of exercising dominion and control over the gun and the drugs." *Id.* Based on the erroneous instructions and inaccurate hearsay testimony before the grand jury, the court found defendants were seriously prejudiced and dismissed the indictment.

Here, the government appears to have misinstructed the grand jury in several distinct ways.

First, the government seems to have instructed the grand jury that announcing the neighbor's address was sufficient to indict. That is plainly erroneous. Section 119 narrowly defines the "restricted personal information" of a "covered person": "the Social Security number, the home address, home phone number, mobile phone number, personal email, or home fax number of, and identifiable to, that individual." 18 U.S.C. § 119(b)(1). A neighbor's address clearly does not qualify.

Second, the government may have instructed the grand jury that Ms. Brown intended to incite or facilitate the commission of a crime of violence. The government does not say whether it explained the concept of a "crime of violence" to the grand jury, or if the grand jury asked questions about the definition of a crime of violence, or whether it invited the grand jury to return an indictment on a theory that Ms. Brown intended to invite violence in the abstract, without any nexus to a specific crime of violence.

Third, the government likely did not instruct the grand jury on the standard for "true threats" or incitement under the *Brandenberg* test. The government concedes section 119 is only constitutional if limited to these narrow categories. Thus, the grand jury needed to find probable cause that Ms. Brown conspired to make a *true threat* of violence or engage in *Brandenburg* incitement, not just "threaten," "intimidate" or "incite" as a lay juror might understand those terms. The government's legal instructions to the grand jury, and any questions and answers made about the law and how the facts of this case fit into the law, must be examined.

In addition to these inaccurate legal instructions, as in *Peralta*, the grand jury may have heard inaccurate hearsay testimony. The complaint, sworn by Special Agent Robert Kurtz III, false claims that defendants "shouted DO R.R.'s personal home address," and "live stream[ed] their actions on social media." Complaint ¶ 7 (emphasis added). Agent Kurtz was not present during the events on August 28, 2025. If he presented false and inaccurate testimony, this was prejudicial to Ms. Brown. And if he relied on Officer Huitzilin's false statement that defendants did say his actual address—conduct that would be a basis for false statements under 18 U.S.C. § 1001—the defense is entitled to know Officer Huitizlin's false statement to law enforcement under *Brady*.

**D.     The policy reasons for Rule 6 secrecy do not apply.**

Aside from the fact that Rule 6(e)(3)(E)(i)-(ii) explicitly carves out exception for Rule 6 secrecy, the policy reasons for maintaining secrecy no longer apply:

(1) prevent the escape of prospective indictees, (2) insure the grand jury of

8

unfettered freedom in its deliberations, (3) impede the subornation of perjury and tampering of witnesses by targets of the investigation, (4) encourage forthrightness in witnesses without fear of retaliation, and (5) act as a shield for those who are exonerated by the grand jury.

*United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993). "[I]f the reasons for maintaining secrecy do not apply at all in a given situation, or apply to only an insignificant degree, the party seeking the disclosures should not be required to demonstrate a large compelling need." *United States Indus., Inc. v. United States District Court*, 345 F.2d 18, 21 (9th Cir. 1965). For example, "[w]hen the grand jury investigation is already terminated and an indictment has been issued, only 'institutional' concerns are implicated by the documentary disclosure." *Dynavac*, 6 F.3d at 1412 (citation omitted).

Here, none of the policy reasons for Rule 6 secrecy apply. The grand jury investigation has terminated, the unsealed indictment was issued, and the defendants are preparing for trial in just over one month. The defense is not requesting any information that could identify any grand juror or the substance of the jurors' deliberations. Thus, granting this motion would not undermine the goals of grand jury secrecy. *See, e.g., In re Grand Jury Proceedings*, 62 F.3d 1175, 1180 n.2 (9th Cir. 1995).

## IV. CONCLUSION

Based on the above, this Court should grant Ms. Brown's motion to compel grand jury materials. The grand jury transcript of witness testimony, legal instructions, and any colloquies between the government and grand jury, should be unsealed and produced to the defense. At a minimum, the materials should be provided to the Court for *in camera* review.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 15, 2026         By   */s/ Erica Choi*
                                ERICA CHOI
                                Deputy Federal Public Defender
                                Attorney for ASHLEIGH BROWN